1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

12   CHERYL RENE LUCAS,                    Case No. 5:16-cv-02464-SHK

13                        Plaintiff,

14          v.                             OPINION AND ORDER

15   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,
16                        Defendant.

17

18

19          Plaintiff Cheryl Rene Lucas ("Plaintiff") seeks judicial review of the final

20   decision of the Commissioner of the Social Security Administration

21   ("Commissioner" or the "Agency") denying her application for disability

22   insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act").

23   This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C.

24   § 636(c), the parties have consented to the jurisdiction of the undersigned United

25   States Magistrate Judge.  For the reasons below, this case is REMANDED for

26   further proceedings.

27   / / /

28   / / /

# I.    BACKGROUND

Plaintiff filed an application for DIB[1] on June 28, 2013, alleging disability beginning on June 7, 2013.  Transcript ("Tr.") 160-66.[2]  Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on July 17, 2015, an ALJ determined Plaintiff was not disabled.  Tr. 32-42, 112. Plaintiff sought review by the Appeals Council, however, review was denied, on September 30, 2016.  Tr. 1-6, 15-17.  This appeal followed.

# II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the

---

[1] The parties also assert in their Joint Stipulation that Plaintiff applied for supplemental security income ("SSI"), under Title XVI of the Act.  Electronic Case Filing Number ("ECF No.") 25, Joint Stipulation at 2.  Close inspection of the record, however, reveals that this assertion is erroneous because Plaintiff specifically stated in her DIB application that "[she] do[es] not want to file for SSI."  Tr. 160.

[2] A certified copy of the Administrative Record was filed on May 9, 2017.  ECF No. 16.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (internal citation omitted)).  A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."  <u>Stout v. Comm'r Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).  Finally, a court may not reverse an ALJ's decision if the error is harmless.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

### A.    Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

(a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

<u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).  "If a claimant meets both requirements, he or she is 'disabled.'"  <u>Id.</u>

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the

sequence, there is no need to consider subsequent steps." <u>Tackett</u>, 180 F.3d at 1098; 20 C.F.R. § 404.1520.  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. <u>Tackett</u>, 180 F.3d at 1098.

The five steps are:

Step 1.  Is the claimant presently working in a substantially gainful activity [("SGA")]?  If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB].  If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  <u>See</u> 20 C.F.R. § 404.1520(b).

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to [DIB].  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  <u>See</u> 20 C.F.R. § 404.1520(c).

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to [DIB].  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  <u>See</u> 20 C.F.R. § 404.1520(d).

Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to [DIB].  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the

4

evaluation proceeds to the fifth and final step. <u>See</u> 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. <u>See</u> 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. <u>See</u> 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See <u>id.</u>

<u>Id.</u> at 1098-99.

**B.  <u>Summary Of ALJ's Analysis</u>**

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2018." Tr. 34. The ALJ then found at step one, that "[Plaintiff] has not engaged in substantial gainful activity [("SGA")] since June 17, 2013, the alleged onset date (20 C.F.R. 404.1517 <u>et</u> <u>seq.</u>)." <u>Id.</u>

At step two, the ALJ found that "[Plaintiff] has the following severe impairments: bilateral knee arthritis; obesity; sleep apnea; deviate[d] septum, repaired; degenerative disc disease; mood disorder; and anxiety disorder." <u>Id.</u>

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Tr. 35.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "light work . . . with the following additional restrictions: standing and walking four hours out of an eight-hour workday; occasional postural activities; no ladders[,] scaffolds[,] or ropes; no unprotected heights or dangerous machinery; and detailed but not complex tasks." Tr. 36. The ALJ also assessed the medical opinion evidence of record and gave "little weight" to the opinions of Plaintiff's treating physician James Carlitte, M.D., "great, but not significant" weight to the opinions of the state agency medical consultants, "significant weight" to the mental assessment of the State agency psychological consultant, "some weight" to the opinion of psychiatric consultative examiner, Ijeoma Ijeaku, M.D., and "little weight" to the "medical statements in a therapist initial evaluation report." Tr. 39-40. The ALJ did not give controlling weight to any doctor's opinion.

At step four, the ALJ found that "[Plaintiff] is capable of performing [her] past relevant work [("PRW")] as an attendance clerk, administrative clerk, and school bus driver" as it is "generally performed pursuant to the [Dictionary of Occupational Titles ("DOT")] and as [it was] actually performed by [Plaintiff]." Tr. 41. The ALJ concluded that because Plaintiff was able to return to her PRW, "[Plaintiff] has not been under a disability, as defined in the . . . Act, from June 17, 2013, through [July 17, 2015,] the date of th[e] decision." Tr. 42. Having concluded that Plaintiff was not disabled at step four, the ALJ did not assess whether Plaintiff could perform other work at step five.

In this appeal, Plaintiff raises the following three issues, whether the ALJ erred by: (1) rejecting the opinion from her treating physician James Carlitte, M.D.; (2) rejecting her subjective symptom statements concerning the extent and severity of her impairments; and (3) determining that she can perform her PRW. ECF No. 25, Joint Stipulation at 4.

6

## C.   ALJ's Consideration Of Dr. Carlitte's Opinion

Plaintiff argues that the ALJ erred by "fail[ing] to provide specific and legitimate reasons in rejecting Dr. Carlitte's opinion." Id.  Plaintiff specifically argues that the ALJ erred in rejecting Dr. Carlitte's opinion by: (1) finding it "not consistent with the evidence of record, discussed above" because the ALJ's preceding "discussion d[id] not support the ALJ's articulation"; (2) "rel[ying] on x-rays of [her] knees versus the MRIs of [her] knees" because the x-rays showed different results than the MRIs; (3) "fail[ing] to mention the lumbar MRI . . . [of her] spine"; (4) "identif[ying] the positive examination findings"; (5) finding Plaintiff's "treatment limited to medication and injections"; and (6) assigning greater weight to the state agency physicians. Id. at 5-8.

### 1.   ALJ's Analysis Of Dr. Carlitte's Opinion

The ALJ gave "little weight" to a statement made "by [Plaintiff's] treating physician, James Carlitte . . . indicat[ing] [Plaintiff] was restricted to less than sedentary exertional work (Ex. 7F)[,]" because the statement "is not consistent with the evidence of record, discussed above."[3] Tr. 39.

---

[3] In the next paragraph of the decision, the ALJ also gave "little weight" to "statements indicating temporary restrictions" made at "Ex 7F, p. 63." Tr. 39.  Although Exhibit 7F contains an RFC assessment by Dr. Carlitte, Exhibit 7F is only five pages long and, thus, does not contain a sixty-third page. See Tr. 490-94.  Accordingly, it is unclear whether the ALJ intended to give little weight to Dr. Carlitte's opinion at Exhibit 7F, or to an opinion at the sixty-third page of another exhibit.  A close inspection of Exhibit 7F, however, compels a finding that the ALJ was not assessing the opinion of Dr. Carlitte contained therein, because the ALJ discounted the opinion, in part, because the "temporary restrictions [stated therein] . . . do not reflect [Plaintiff's] long-term capabilities and/or limitations during the relevant time period." Tr. 39.  The opinion at Exhibit 7F is dated May 9, 2014, which is during the relevant time period, and states that the impairments assessed have lasted, "or are expected to last, over 12 months," which indicates that the restrictions endorsed were not temporary. Tr. 492, 494.  Moreover, the ALJ had just assessed Exhibit 7F in the previous paragraph.  Thus, this Court finds it unlikely that the ALJ would accord little weight the entire opinion found in Exhibit 7F and then in the very next paragraph, accord little weight to one isolated statement within that already entirely discounted opinion.  Accordingly, because it is unclear which doctor's opinion the ALJ was analyzing, this Court cannot asses the merits of this one of the ALJ's analyses.

Exhibit 7F contains an RFC assessment by Dr. Carlitte from May 9, 2014, in which Dr. Carlitte stated that he first saw Plaintiff on October 14, 2004, and that he continued to see Plaintiff "as needed." Tr. 491. Dr. Carlitte diagnosed Plaintiff with "chronic back pain, lumbar stenosis, [gastroesophageal reflux disease ("GERD")], depression, morbid obesity, asthma, [obstructive sleep apnea ("OSA")], functional bowel disease, [and] osteoarthritis of the knee." Id. Dr. Carlitte offered a "poor" prognosis for these conditions and noted that Plaintiff had received lumbar epidural steroid injections to treat her stenosis and that she received Norco, narcotics, chiropractic care, and sedation to treat her symptoms. Id. Dr. Carlitte stated that Plaintiff's impairments have lasted or are expected to last over 12 months and that they "constantly" "interfere with the attention and concentration necessary to sustain simple, repetitive work tasks." Tr. 492.

Dr. Carlitte opined that as a result of Plaintiff's impairments, she cannot sit more than ten minutes at a time or stand more than five minutes at a time, and that during an eight-hour work day with normal breaks, Plaintiff can sit or "stand/walk" for a total of less than two hours each. Tr. 492-93. Dr. Carlitte also opined that Plaintiff would require twelve breaks per two-hour period at five minute intervals. He added that Plaintiff could only occasionally lift ten pounds or less, and that she could never lift more than ten pounds. Id. Finally, Dr. Carlitte opined that Plaintiff could never twist, stoop, bend, crouch, climb ladders, or stairs, and that she would likely miss more than four days per month as a result of her impairments. Tr. 493-94.

The ALJ also gave "little weight" to "a statement by [Plaintiff's] health care provider," at "Ex. 3F, p. 6[,]" "indicating [Plaintiff] was unable to perform all job functions" because, the ALJ concluded, the "opinion is not consistent with the above-discussed evidence and does not provide a function-by-function analysis of [Plaintiff's] limitations." Tr. 39.

Page six of Exhibit 3F is part of a "certification of health care" form completed by Dr. Carlitte on July 2, 2013. Tr. 343. In this certification, Dr. Carlitte opined that Plaintiff would be unable to perform "all job functions" of her PRW, as they were listed in a "physical requirements of position/occupational title" form at pages seven and eight of Exhibit 3F.[4] Dr. Carlitte also opined that Plaintiff could not perform modified duty, she would be incapacitated due to her medical condition, she would need to attend treatment appointments for her condition, she would miss work because of her medical condition, and that plaintiff's condition would cause "episodic flare-ups periodically preventing [her] from performing [her] job functions." Tr. 343.

Finally, the ALJ gave "little weight" to "opinions prior to the alleged onset date (e.g. Exs. 1F and 3F, pp. 1-5)[,]" because "those opinions do not reflect [Plaintiff's] capabilities and/or restrictions during the relevant time period" and "[t]hus . . . provide little probative value to the current analysis." Tr. 39.

Exhibit 1F contains x-ray reports of Plaintiff's knees and hips that were prepared by Dr. Carlitte on May 8, 2012, and November 28, 2012. Tr. 310-13. With regard to Plaintiff's knees, the reports revealed "mild to moderate degenerative changes of the patellofemoral articulation" in Plaintiff's right knee, "minor degenerative changes in the patellofemoral compartment" and osteoarthritis in Plaintiff's left knee, and "moderate degenerative changes of the medial compartments bilaterally" in both of Plaintiff's knees. Tr. 310-12. With

---

[4] This Court notes that the "physical requirements of position/occupational title" form was completed by Plaintiff's supervisor, and states the "frequency required for each activity listed" in Plaintiff's PRW as an Office Assistant II at the California Highway Patrol. Tr. 344-45. This Court also notes that the ALJ gave "little weight" to the assessment because, the ALJ found, "it is unclear if this statement was signed by an acceptable medical source . . . [and] is not consistent with the above-discussed evidence." Tr. 39. This Court disregards the ALJ's finding because the assessment lists the requirements of Plaintiff's PRW as stated by her supervisor and is not a medical opinion of Plaintiff's RFC.

regard to Plaintiff's hips, the report revealed "minimal degenerative changes with no acute right hip findings" in Plaintiff's right hip.[5]  Tr. 313.

Pages one through five of Exhibit 3F contain "certification of health care" forms that were prepared by Dr. Carlitte on March 7, 2013, and July 2, 2013.  Tr. 338-42.  The March 7, 2013, form was completed by Dr. Carlitte and notes that he has treated Plaintiff in May, July, September, and October of 2012 and in January of 2013 for her condition.  Tr. 339.  Similarly, to the July 2, 2013, forms discussed above, Dr. Carlitte opined in the March 7, 2013, form that Plaintiff is unable to perform the functions of her PRW, and, specifically, that she is "unable to stoop [and] get up [and] down out of [her] chair multiple times because of knee problems."  Tr. 340.  Dr. Carlitte opined that Plaintiff would also be unable to perform modified duty work, that she would need follow up treatment for her medical conditions, and that Plaintiff's condition would cause "episodic flare-ups periodically preventing [her] from performing [her] job functions" that would persist for twelve months.  Id.

### 2.    Standard To Review Dr. Carlitte's Opinion

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians.  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)).  "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

---

[5] This Court notes that pages seventeen through nineteen of Exhibit 1F contain an "Operative Report" prepared by Dr. Arun Agrawal, D.O., dated August 27, 2013, discussing the results of a lumbar epidural steroid injection Plaintiff received on June 14, 2013.  Tr. 316-19.  The report lists MRI findings including "multilevel lumbar degenerative disk disease, severe narrowing of [Plaintiff's] central canal [at] L5-S1, [and a] posterior disk bulge [at] L4-L5 and L5-S1."  Tr. 39, 318 (emphasis added).

record.'" <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." <u>Id.</u> (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" <u>Id.</u> (quoting <u>Ryan v. Comm'r Soc. Sec. Admin.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" <u>Garrison v. Colvin</u>, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting <u>Moore v. Comm'r Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" <u>Trevizo</u>, 871 F.3d at 675 (quoting <u>Ryan</u>, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" <u>Garrison</u>, 759 F.3d at 1012 (quoting <u>Orn v. Astrue</u>, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" <u>Trevizo</u>, 871 F.3d at 675 (quoting <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

### 3. The Record Does Not Support The ALJ's Conclusion.

Here, the ALJ rejected the only opinion that he acknowledged as coming from Dr. Carlitte at Exhibit 7F for the sole reason that it was "not consistent with the evidence of record, discussed above." Tr. 39. Because the ALJ's preceding

11

discussion did not include a finding that Dr. Carlitte's opinion was contradicted by that of another doctor, the Court must determine whether the ALJ's reasoning—that inconsistency with evidence "discussed above"—was a specific and legitimate reason for rejecting Dr. Carlitte's uncontradicted opinion. This Court finds that it was not.

The ALJ's statement that Dr. Carlitte's opinion is not consistent with previously discussed evidence, without pointing to specific examples of such evidence and providing an explanation or interpretation of how it is inconsistent with Dr. Carlitte's opinion, does not amount to a clear and convincing, nor even a specific and legitimate, reason for discrediting Dr. Carlitte's opinion. See Garrison, 759 F.3d at 1012 ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct."); see also id. at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)). Accordingly, this Court finds that the ALJ erred by assigning little weight to Dr. Carlitte's RFC assessment at Exhibit 7.

The Court also finds that the ALJ erred in his analysis of Dr. Carlitte's opinion contained in Exhibits 3F for two reasons. First, to the extent the ALJ gave little weight to Dr. Carlitte's opinion in Exhibit 3F because it was "not consistent with the above-discussed evidence," the ALJ erred by failing to explain which "above-discussed" evidence Exhibit 3F was inconsistent with, and why that evidence was more persuasive than Dr. Carlitte's opinion. Tr. 39.

Second, to the Extent the ALJ gave little weight to Exhibit 3F because it was prior to the alleged onset date and did "not reflect [Plaintiff's] capabilities and/or restrictions during the relevant time period," this Court finds that this conclusion

was also erroneous.  Tr. 39.  As stated above, Exhibit 3F contains two reports prepared by Dr. Carlitte.  The first report is dated March 7, 2013, and states that Plaintiff would experience periodic episodic flare-ups of her symptoms for twelve months and that these flare-ups would prevent Plaintiff from performing her job functions.  Tr. 339-40.  Thus, this opinion endorses functional limitations that would span well past Plaintiff's alleged onset date of June 7, 2013, and is, therefore, highly probative of Plaintiff's ability to sustain her PRW.  The second report is dated July 2, 2013, which is nearly a month into Plaintiff's claimed disability period, and states that the "duration of [Plaintiff's] medical condition or need for treatment" is "ongoing."  Tr. 342.  Thus, contrary to the ALJ's finding, this Court finds that the functional limitations endorsed in this report are also highly probative to Plaintiff's capabilities during the relevant time period.  Accordingly, this Court finds that the ALJ erred by assigning little weight to Dr. Carlitte's opinion at Exhibit 3F.

The Court is similarly unpersuaded by the ALJ's finding that the opinions contained in Exhibit 1F have little probative value because they are from prior to the alleged onset date for two reasons.  First, the x-ray reports in Exhibit 1F that are attributable to Dr. Carlitte are from May and November 2012 and document long-term degenerative changes in Plaintiff's knees and hip.  Because this objective evidence was only seven and thirteen months old when Plaintiff applied for disability, it documented long-term degenerative changes, and, critically, because the ALJ did not point to any evidence that contradicts these objective findings, this Court cannot conclude that this objective evidence was stale and of little probative value.

Second, the ALJ's rejection of Exhibit 1F was faulty because portions of the exhibit contain records from after Plaintiff's alleged disability onset date. Specifically, Dr. Agrawal's Operative Report that chronicled a lumbar epidural steroid injection Plaintiff received on June 14, 2013—one week after Plaintiff's

alleged disability onset date—was contained on pages seventeen through nineteen of Exhibit 1F.  Tr. 316-19.  While this report is not an opinion of Dr. Carlitte, it is nevertheless relevant to the Court's analysis here because Dr. Carlitte specifically considered Plaintiff's epidural injections in his RFC report, whereas the ALJ found at least this epidural injection and the resulting diagnosis to have little probative value.  See Tr. 491 (the ALJ noted in his RFC analysis in Exhibit 7F that Plaintiff had "lumbar epidural steroids for [her] stenosis—relief after 3x.").  Moreover, the report lists MRI findings that are highly probative to Plaintiff's disability claim, such as "multilevel lumbar degenerative disk disease, severe narrowing of [Plaintiff's] central canal [at] L5-S1, [and a] posterior disk bulge [at] L4-L5 and L5-S1."  Tr. 39, 318 (emphasis added).  Accordingly, the Court finds that the ALJ erred in his assessment of Exhibit 1F.

Finally, as a general matter, the ALJ's analyses of Dr. Carlitte's opinions were silent with regard to the extensive history of Dr. Carlitte's treatment of Plaintiff.  For example, as stated above, the record reveals that Plaintiff began seeing Dr. Carlitte on October 14, 2004, and in the year leading up to her DIB application, Plaintiff saw Dr. Carlitte approximately once every one to two months for issues relating to her knee pain.  Tr. 339, 491.  This lack of discussion regarding: (1) the length of Plaintiff's treatment relationship with Dr. Carlitte; (2) the fact that Plaintiff saw Dr. Carlitte frequently; and (3) the nature or extent of Plaintiff's visits with Dr. Carlitte, also constitutes reversible error.  See Trevizo, 871 F.3d at 676 (ALJ's "fail[ure] to apply the appropriate factors . . . such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion" when "determining the extent to which the [plaintiff's treating doctor's] opinion should be credited . . . alone constitutes reversible legal error.").

Accordingly, for the reasons discussed above, this Court finds that remand of this case is appropriate so that the Commissioner can reassess Dr. Carlitte's

opinion evidence.  Because errors also exist in the ALJ's analysis of Plaintiff's testimony, however, this Court addresses some of those errors below so that they can also be reassessed upon remand.

### D.    ALJ's Consideration Of Plaintiff's Testimony

Plaintiff argues that the ALJ erred by "fail[ing] to provide clear and convincing reasons in finding [her] not credible."  ECF No. 25, Joint Stipulation at 26.  Plaintiff specifically argues that the ALJ erred in rejecting her testimony by: (1) basing his finding on her ADLs, because "[n]one of the activities . . . reflected in the record would exceed the limitations identified by [Plaintiff]"; (2) finding her "not credible because of the lack of physician opinion in the file"; and (3) "giving short shrift to [her] work history" because "[a] good work history is probative of credibility."  Id. at 28-30.

### 1.    ALJ's Analysis Of Plaintiff's Credibility

The ALJ began his analysis of Plaintiff's testimony by noting that Plaintiff "alleged the symptoms of pain, panic attack, and nervousness" and "alleged she was disabled as a result of sleep apnea, back, knee, anxiety, and depression related symptoms."  Tr. 37.  The ALJ noted that Plaintiff "claimed she was limited in her ability to sit more than 15 minutes before needing to stand and stretch, stand more than 15 minutes, lift more than 10 pounds, and stay on task."  Id.

The ALJ found that Plaintiff's "medically determinable impairments could not reasonably be expected to cause the alleged symptoms; moreover, [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible."  Id.  The ALJ noted two reasons to support this adverse credibility finding.  Tr. 37-38.

First, the ALJ reasoned that "[Plaintiff] reported engaging in numerous daily tasks, which reflect relatively normal levels of activity and involve similar tasks required of some jobs."  Tr. 37.  In support of this finding, the ALJ specifically

pointed to Plaintiff's testimony that she could "cook, drive, and do laundry, dishes, and sewing on good days." Id. (emphasis added).

Second, the ALJ reasoned that "the credibility of [Plaintiff's] allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence," which includes "limited findings and mostly conservative treatment" and "no reliable medical source statement from any physician endorsing the extent of [Plaintiff's] alleged functional limitations." Tr. 38. The ALJ also noted objective physical examination findings relating to Plaintiff's knee and back impairments as part of this finding and concluded that Plaintiff's medical treatment for these impairments "was limited to medications and injections since the alleged onset date," "indicat[ing] that [Plaintiff's] alleged knee and back impairments are stable." Id. The ALJ also noted that Plaintiff had nasal surgery in October 2014 and that "[t]reatment notes from November of 2014 indicated [that Plaintiff's] septum was healing well." Id. The ALJ, therefore, concluded that "the objective findings relevant to [Plaintiff's] sleep apnea and now-repaired deviated septum do not suggest greater limitations than those defined in the [RFC]." Id.

### 2. Standard To Review Plaintiff's Pain Related Claims

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not credible" and explaining 'which evidence contradicted that testimony.'" Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphases in original) (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 489, 494 (9th Cir. 2015)).

/ / /

/ / /

/ / /

### 3. The Record Does Not Support The ALJ's Credibility Analysis.

The Court first addresses the ALJ's finding that Plaintiff's testimony is not credible because it contradicts her ADLs.

When determining whether the claimant's subjective symptom testimony is credible, "[t]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ may also consider:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;

(2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and,

(3) the claimant's daily activities.

Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

The Ninth Circuit, however, "'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'" Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). It is only when a "claimant is able to spend a substantial part of h[er] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, [that] a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Here, Plaintiff's ADLs, as cited by the ALJ, do not contradict Plaintiff's testimony regarding her limitations. The ALJ found that Plaintiff can cook, drive, do dishes, laundry, and sew, "on good days." Tr. 37. The record reveals,

however, that Plaintiff testified at the administrative hearing that her son usually does the dishes and her husband usually does the grocery shopping and that she can perform these tasks only when she is "having a good day" and "feel[s] up to it." Tr. 59-60. Plaintiff also testified that when she starts projects, such as sewing, she has to stop and go lay down because her back hurts. Tr. 60. Further, Plaintiff stated that she can drive and cook, but she provided no indication of how far she can drive or what types of meals she prepares and how long it takes her to prepare them. Tr. 58-60.

Thus, on the record before this Court, it does not appear that Plaintiff's testimony regarding her occasional grocery shopping or dish washing requires her to exceed her endorsed limitations of sitting and standing for fifteen minutes each, lifting more than ten pounds, or staying on task. Similarly, there is no evidence that Plaintiff's ability to cook or drive requires her to exceed her endorsed limitations. See Fair, 885 F.2d at 603 ("claim of pain-induced disability not gainsaid by capacity to engage in periodic restricted travel." (citing Howard, 782 F.2d at 1488)). Moreover, Plaintiff's testimony about her ability to sew, but only until her back hurts and she has to go lay down, bolsters her credibility because it mirrors her testimony that she cannot stay on task due to her back pain. Finally, Plaintiff's testimony that she can only perform these aforementioned tasks on a good day, or for a limited time before needing to lay down to relieve back pain, cuts against a finding that Plaintiff can spend a substantial part of her day engaged in pursuits involving the performance of these physical functions, or that these tasks are transferable to a work setting.

Accordingly, the Court finds that Plaintiff's ADL's, as cited by the ALJ, do not constitute a specific, clear, and convincing reason to reject Plaintiff's testimony regarding the extent of her functional limitations.

Next, the Court turns to the ALJ's finding that Plaintiff's statements were not credible because of limited objective evidence, mostly conservative treatment,

and no reliable medical source statement from any physician endorsing the extent of Plaintiff's alleged functional limitations.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Here, as an initial matter, the Court finds that the ALJ erred in finding that the record contained no reliable medical source statement from any physician endorsing the extent of Plaintiff's alleged functional limitations, because Dr. Carlitte's improperly rejected opinions largely support Plaintiff's alleged functional limitations.

With regard to the ALJ's finding that Plaintiff's testimony was not credible due to mostly conservative treatment, this Court is similarly unpersuaded. Although the ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," Smolen, 80 F.3d at 1284, a potential reason exists here for Plaintiff to have not sought a more aggressive course of treatment. Plaintiff testified that she was told by her orthopedic surgeon to "just face it that [she's] disabled. [She's] permanently disabled" and that she should "not to walk far because [she's] bone on bone and that's just going to get worse." Tr. 54. The fact that Plaintiff's doctor told her to just face it, she's permanently disabled, and provided Plaintiff with only one possible remedy—to walk less—potentially explains why Plaintiff may not have sought more aggressive treatment, because no solution besides walking less was offered to her by her doctor. Moreover, Plaintiff's testimony that her doctor told her she is permanently disabled and that she should not walk far because she is bone on bone and her condition is getting worse, also cuts against the ALJ's finding that no doctor endorsed the extent of Plaintiff's alleged functional limitations. Instead, this Evidence supports Plaintiff's functional limitation testimony.

Similarly, this Court is not persuaded by the ALJ's finding that Plaintiff sought only conservative treatment for her back pain. Specifically, the ALJ found

19

that Plaintiff's treatment regime was conservative because Plaintiff received only medications and injections to help ameliorate her condition. This Court finds this finding to be an understatement of Plaintiff's treatment record. For example, although Plaintiff testified that she sees her doctor every three months to get "shots in the back where the nerves come out in [her] lower back" to help with inflammation caused by a pinched nerve, Plaintiff also testified that she has "been getting epidurals. Three sets for about three or four years." Tr. 56. However, as discussed above, evidence of Plaintiff's lumbar epidural steroid injections was improperly discredited and consequently overlooked by the ALJ. And a close inspection of this record reveals that when Plaintiff receives her epidural steroid injections, she does so in an operating room, under conscious sedation, and is required to remain in doctor's care in a recovery room after the procedure is completed. See, e.g., Tr. 316-18. Accordingly, when the evidence of Plaintiff's epidural injections that the ALJ erroneously rejected is considered, the Court finds the ALJ's conclusion—that Plaintiff sought only conservative treatment for her back—was erroneous and requires reevaluation by the Commissioner on remand.

Moreover, because the improperly rejected evidence of Plaintiff's epidural injections also contains MRI findings demonstrating "multilevel lumbar degenerative disk disease, severe narrowing of central canal L5-S1, [and a] posterior disk bulge [at] L4-L5 and L5-S1," the Court finds that the ALJ's conclusion that that the medical records contain only limited findings was erroneous and requires reevaluation by the commissioner on remand as well. Tr. 39, 318.

### E.    ALJ's Step Four Finding

Because the ALJ erred in his analysis of Plaintiff's testimony and the opinions of Dr. Carlitte, both of which demonstrate limitations greater than those assessed by the ALJ, it follows that the ALJ's step four finding—that Plaintiff can

perform her PRW—is not supported by substantial evidence and shall be reassessed by the Commissioner on remand.

## IV. CONCLUSION

The ALJ's finding that Plaintiff was not disabled under the Act is not supported by substantial evidence in the record. Accordingly, the Commissioner's decision is **REVERSED** and this case is for further administrative proceedings as set forth above. See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "the Court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Specifically, on remand, the ALJ shall review and consider Plaintiff's medical records, including the opinions of Dr. Carlitte, and reassess Plaintiff's testimony in determining whether Plaintiff can perform her PRW at step four, or any other work at step five.

IT IS SO ORDERED.

DATED:  May 29, 2018

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge